UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

STEVEN RAMSEY

 Plaintiff,

v.

JAY CASHMAN, INC.

 Defendant.

CIVIL ACTION

NO. 04-CV-10699(RCL)

**PLAINTIFF'S AMENDED MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION IN *LIMINE* TO EXCLUDE EVIDENCE OF COLLATERAL SOURCE BENEFITS**

On April 5, 2001, Plaintiff was injured in the course and scope of his employment for Defendant Jay Cashman, Inc. He brought suit against Cashman under the Jones Act, 46 USCS § 688, et. seq., and the general maritime law of the United States, claiming that Cashman (1) breached its duty to provide Mr. Ramsey with a safe place to work, and (2) failed to provide to him a vessel reasonably fit for its intended use. Although he was injured in April, 2001, in approximately 2005 Plaintiff applied for and received Social Security benefits, in the approximate amount of $1000.00 a month.

## JONES ACT

The Jones Act is subject to federal substantive law.[1] Congress enacted the Act in 1915 to bridge a gap between the general maritime law and negligence. It became "the sole basis upon which a seaman or his beneficiaries may sue his employer for negligence." Ivy v. Security Barge Lines, 606 F.2d 524, 525 (5th Cir. 1979). "While the gravamen of a Jones Act suit is negligence, it is not the relatively narrow common law concept of negligence, but a more liberal one commensurate with the broad remedial purposes of the Federal Employers' Liability Act." Jamison v. Encarnacion, 281 U.S. 635, 74 L. Ed. 1082, 50 S. Ct. 440 (1930)).The intent of the Act is to provide a liberal recovery to injured seamen. See Kernan v. American Dredging Co., 355 U.S. 426, 432, 2 L. Ed. 2d 382, 78 S. Ct. 394 (1958).

---

[1] In addition to case law directly interpreting the Jones Act, the statute incorporates and "adopts 'the entire judicially developed doctrine of liability' under the Federal Employers' Liability Act ('FELA')," 45 U.S.C. § 51. American Dredging Company v. Miller, 510 U.S. 443, 455-456, 127 L. Ed. 2d 285, 114 S. Ct. 981 (1994); McKeown v. Woods Hole, 9 F. Supp. 2d 32 (D. Mass. 1998); see generally Thomas J. Schoenbaum, 1 Admiralty and Maritime Law at 312 (2d ed. 1994). In this regard, it has long been settled that "the proper measure of damages [under the FELA and, thus, under the Jones Act] is inseparably connected with the right of action," and therefore is an issue of substance that "must be settled according to general principles of law as administered in the Federal courts."Monessen S. R. Co. v. Morgan, 486 U.S. 330, 108 S. Ct. 1837, 100 L. Ed. 2d 349 (1988); Chesapeake & Ohio R. Co. v. Kelly, 241 U.S. 485, 491, 60 L. Ed. 1117, 36 S. Ct. 630 (1916); see also Norfolk & Western R. Co. v. Liepelt, 444 U.S. 490, 493, 62 L. Ed. 2d 689, 100 S. Ct. 755 (1980).

## COLLATERAL SOURCE RULE

At trial, it is anticipated that Defendant Jay Cashman, Inc. ("Cashman") will seek to introduce collateral source information relating to Mr. Ramsey's receipt of Social Security benefits to discredit and/or impeach the Plaintiff in an attempt to claim Mr. Ramsey is a malingerer. Such evidence would be highly prejudicial, and clearly much more prejudicial than probative. And, for the following reasons, collateral source evidence should be precluded at trial.

Under the collateral source rule, a Plaintiff need not offset his recovery from the Defendant by the amount of any benefits received from a source collateral to the Defendant, and evidence of such benefits should, therefore, not be permitted at trial. McGrath v. CONRAIL, 136 F.3d 838, 840-41 (1st Cir. 1998). The rule is designed to prevent juries from improperly misusing evidence of collateral sources. The rule mitigates the danger of the jury finding no liability or reducing a damage award "when it learns that plaintiff's loss is entirely or partially covered." McGrath, 136 F.3d at 840, citing Moses v. Union Pac. R.R., 64 F.3d 413, 416 (8th Cir. 1995); see also Tipton v. Socony Mobil Oil Co., 375 U.S. 34, 36-37, 11 L. Ed. 2d 4, 84 S. Ct. 1 (1963) (per curiam).

The seminal case on this issue is Eichel v. New York Central Railroad Co., 375 U.S. 253, 11 L. Ed. 2d 307, 84 S. Ct. 316 (1963). In Eichel, the Supreme Court upheld the district court's decision to exclude such evidence, finding that "insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice". Id. at 255. The Court held, therefore, that in consideration of other available evidence, introduction of such evidence would have insufficient probative value in regard to malingering.

The First Circuit has found that the analysis in Eichel is not inconsistent with Federal Rule of Evidence 403." McGrath, 136 F.3d at 841, citing Savoie v. Otto Candies, Inc., 692 F.2d 363, 371 n.8

(5th Cir. 1982). Pursuant to Rule 403, Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Accordingly, this Circuit relies upon a Rule 403 balancing test to determine whether or not collateral source evidence is admissible.

Here, it is anticipated that Cashman will rely on the decision in McGrath, and several state law cases,[2] to support its usage of collateral source benefits to impeach the Plaintiff. In McGrath, the First Circuit upheld the trial court's allowance of collateral source evidence in order to show lack of motivation to go back to work. Id. In doing so, however, the Court did not create a *per se* presumption that such evidence is always to be admitted to show "malingering."

---

[2]As this is a case brought under the Jones Act, and governed by federal substantive law, state substantive law cases have little, if any, utility. For example, as De Medeiros v. Koehring Co., 709 F.2d 734 (1st Cir. Mass. 1983) was a diversity case that specifically distinguished itself from cases such as this one brought under a federal statute, its usefulness negligible. See also Thompson v. Kawasaki Kisen, K. K., 348 F.2d 879 (1st Cir. Mass. 1965) (distinguishing Eichel as an action under the Federal Employers' Liability Act, and instead applying Massachusetts law that evidence of receipt of collateral income is admissible "to affect the weight of plaintiff's previous testimony that he was disabled from working on account of the accident" in a diversity case).

Not surprisingly, therefore, in this Circuit, collateral source benefits are routinely precluded at trial. See England v. Reinauer Transp. Cos., L.P., 194 F.3d 265 (1st Cir. Mass. 1999)(trial court did not abuse discretion by excluding evidence of collateral source benefits, where such evidence, although perhaps relevant to credibility or motivation for not returning to work, would be cumulative as well as unfairly prejudicial); Falconer v. Penn Mar., Inc., 397 F. Supp. 2d 62, 67 (D. Me. 2005) (evidence of a Plaintiff's receipt of Social Security benefits to show alleged malingering would "unnecessarily complicate the trial of this case with complex and tangential issues, would likely lead to juror confusion, would bear marginal relevance, and would be more prejudicial than probative").

In this case, Cashman claims that its expert neurosurgeon will testify that Plaintiff is faking or exaggerating his injuries. On September 5, 2007, Cashman deposed its expert neurosurgeon, Ronald Birkenfeld, MD, for purposes of trial. Dr. Birkenfeld will testify elaborately that plaintiff "groaned" when he moved (Birkenfeld Trial Dep. at 45), that his pain was nonreproducible (Birkenfeld Trial Dep. at 44), and that he complained of pain to even the slightest touch, all indicating to the doctor that Plaintiff was exhibiting an "exaggeration of symptoms" (Birkenfeld Trial Dep. at 44, 45). Dr. Birkenfeld will further testify that Mr. Ramsey's ability to ambulate was inconsistent throughout the duration of his examination (there was "variability in his gait") which the doctor also felt proved he was "exaggerating his inability to walk." (Birkenfeld Trial Dep. at 41 - 42). This theme continues throughout the duration of Dr. Birkenfeld's testimony. In addition, Cashman will seek to play surveillance videos purporting to show the Plaintiff in no apparent distress walking and shoveling snow.

As there are less prejudicial means for Defendant to argue its "malingering" case, evidence of collateral source benefits should be excluded at trial.

## CONCLUSION

Cashman cannot dispute that it has other, less prejudicial evidence available to prove the Plaintiff's alleged malingering. Moreover, a Rule 403 balancing test will result in a determination that introduction of collateral source evidence is actually unfairly prejudicial, and consequently much more prejudicial than probative on the issue of Plaintiff's alleged malingering. As such, Plaintiff respectfully requests that his motion to preclude collateral source information at trial should be GRANTED.

The plaintiff,
Steven Ramsey
By his attorneys,
/s/ Samuel J. Rosenthal, Esq.
BARISH ◆ROSENTHAL
Bell Atlantic Tower, Suite 4020
1717 Arch Street
Philadelphia, PA  19103
(215) 923-8900

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on October 11, 2007.

/s/ Ronald M. Davids
Ronald M. Davids