## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

```
*******************************)
STEVEN RAMSEY,                 )
          Plaintiff            )
                               )        Civil Action No.:
v.                             )        04-CV-10699-RCL
                               )
JAY CASHMAN, INC.              )
          Defendant            )
*******************************
```

### DEFENDANT'S MOTION IN LIMINE WITH INCORPORATED MEMORANDUM OF LAW TO EXCLUDE THE PROPOSED EXHIBIT OF HOCHSTRASSER'S MARINA, INC. RECORDS FROM MARCH 2001

NOW COMES the defendant, Jay Cashman, Inc., in the above captioned matter, by and through its undersigned attorneys, Holbrook & Murphy, and respectfully submits this motion in limine to exclude the Hochstrasser Marina, Inc. records of March 7, 2001 relating to prior repairs of the skiff's outboard motor at issue in this case. (See attached Hochstrasser Marina records, attached hereto as Exhibit A).

It is anticipated that the plaintiff will seek to enter the March 2001 Hochstrasser Marina records into evidence during trial to demonstrate that certain electronic repairs were not made to the skiff's outboard motor after the motor was submerged in salt water. The defendant requests that these records be excluded from evidence because the plaintiff has not shown that the outboard motor's alleged electrical problems had any relation whatsoever to the plaintiff's alleged incident on April 5, 2001. As such, the records are irrelevant and unfairly prejudicial to the defendant and should be excluded at trial. The defendant further relies upon the facts and law set out below in its supporting memorandum.

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
EXCLUDE THE MARCH 2001 REPAIR RECORDS OF HOCHSTRASSER MARINA,
INC.**

I.     Factual Background

1.     On April 5, 2001, the plaintiff was employed by the defendant, Jay Cashman, Inc.
as an Engineer.  (See Plaintiff's Deposition, pg. 55, Line 16, attached hereto as Exhibit B).

2.     The plaintiff, and the other marine construction workers, utilized the Crane Barge
Wood I as a floating work platform to effect certain repairs to the Barnegat Light House in
Barnegat, New Jersey.  (See photograph, attached hereto as Exhibit C). (See Plaintiff's
Deposition, pg. 54, Line 20, attached hereto as Exhibit B).

3.     The plaintiff and the other workers used the Tugboat GUNNEY to travel back and
forth to the worksite each day.  (See Plaintiff's Deposition, pg. 54, Lines 21-24; pg. 55, Lines 1-
3; pg. 53, Lines 19-23, attached hereto as Exhibit B).  A smaller vessel, referred to as "the skiff"
was also available for the plaintiff and certain other workers to perform various errands.  (See
Plaintiff's Deposition, pg. 55, Lines 20-24; pg. 56, Lines 1-7; pg. 73, Lines 2-9, attached hereto
as Exhibit B)

4.     The plaintiff testified that as Engineer he was responsible for all the machinery
and engines on the Crane Barge Wood I where the workers were working.  (See Plaintiff's
Deposition, pg. 62, Lines 5-10, attached hereto as Exhibit B).

5.     Prior to the plaintiff's injury, he had no complaints working for Cashman.  In fact,
he testified at deposition that he would return to work with Cashman, if physically able.  (See
Plaintiff's Deposition, pg. 49, Line 17, attached hereto as Exhibit B).

6.      Prior to the date of the plaintiff's injury, he used the skiff every day and sometimes several times a day, without incident or complaint.  (See Plaintiff's Deposition, pg. 74, Lines 16-21, attached hereto as Exhibit B).

7.      Prior to the plaintiff's incident, in approximately March of 2001, the skiff's outboard motor became submerged in water and was taken to Hochstrasser's Marina for repair. The records of Hochstrasser's Marina contain the following handwritten notation, "Note – stator, voltage regulator, switchboxes, starter solenoid, were not changed advise doing so since it sank in saltwater." (See Hochstrasser Marina records, attached hereto as Exhibit A).

8.      After the skiff's outboard motor was returned from Hochstrasser's Marina, the plaintiff experienced difficulties with the motor stalling.  On the date of this incident, but prior to his injury, the skiff's outboard motor stalled as he returned from the nearby sea wall.  (See Plaintiff's Deposition, pg. 94-96, attached hereto as Exhibit B).  At the time the plaintiff was approximately 50-100 feet from the Crane Barge Wood I.  (See Plaintiff's Deposition, pg. 95, Lines 7-8, attached hereto as Exhibit B).  The skiff drifted safely in the current for approximately five minutes, until the current safely returned the skiff to the Crane Barge Wood I.  The plaintiff testified that at this time he was safe because he "knew where he was going".  (See Plaintiff's Deposition, pg. 95, Line 15, attached hereto as Exhibit B).

9.      The plaintiff was employed as an engineer, and he testified that he was "absolutely" familiar with outboard motors.  As the skiff drifted to the Crane Barge Wood I, he worked on the motor in an unsuccessful attempt to restart it. (See Plaintiff's Deposition, pg. 98, attached hereto as Exhibit B).

10.     In the plaintiff's opinion, the outboard motor stalled because of a fuel/air problem. (See Plaintiff's Deposition, pg. 99, Line 7, attached hereto as Exhibit B).   He described a

situation where the motor is "sucking up air" and starving itself of fuel.  (See Plaintiff's Deposition, pg. 102, Line 5, attached hereto as Exhibit B).  As the skiff drifted back to the Crane Barge Wood I, the plaintiff worked pumping the motor's fuel ball in an attempt to restore fuel pressure.  (See Plaintiff's Deposition, pg. 94, Line 5, attached hereto as Exhibit B)

      11.     After the current returned the skiff to the Crane Barge Wood I, the skiff was tied off to a cleat and the plaintiff continued working on the skiff (See Plaintiff's Deposition, pg. 96, attached hereto as Exhibit B).  The plaintiff continued to pump the fuel ball and was able to get the motor running.  However, the motor stalled again.  The plaintiff assumed the engine needed more fuel and he continued squeezing the fuel ball, thereby succeeding in getting the motor running a second time.  (See Plaintiff's Deposition, pg. 99, Lines 7-11, attached hereto as Exhibit B).

      12.     The plaintiff allowed the motor to run for a period of time.  When he believed it was safe to proceed, he backed the skiff away from the Crane Barge Wood I.  Thereafter, the outboard motor stalled again, allegedly contributing to the plaintiff's injury.  (See Plaintiff's Deposition, pg. 104, attached hereto as Exhibit B).

      13.     At the trial of this matter, no witness will testify with the requisite certainty that the alleged recommendation of Hochstrasser Marina to replace the motor's electrical components (stator, voltage regulator, switchboxes and starter solenoid) had anything to do with the outboard motor stalling.  As stated above, the plaintiff testified at length that the problem was a fuel/air issue.  The plaintiff's expert witness, Mr. Sargent, is unable to testify that it is more likely than not that the stalling was caused by an electrical problem.

               Q[Attorney Murphy]: So…you don't known one way or the other whether there was an electronic problem that caused the skiff to stall?
               A[Mr. Sargent]: Electric or electronic, no.
               (See Deposition of Sargent, pg. 46, Lines 10-13, attached hereto as Exhibit D).

II.     The March 2001 Hochstrasser Marina Records Are Irrelevant

Relevant evidence means evidence having a tendency to make the existence of
any fact that is of consequence to the determination of the action more or less
probable than it would be without the evidence.  Fed.R.Evid. 401.

Additionally, to be admissible, a fact "must be agreeable to reason and intelligence and be

sensible and must serve to prove the charge leveled against the defendants."  U.S. v. Klein, 131

F.Supp. 807, 810 (D.C.N.Y. 1955).

The March 2001 Hochstrasser Marina records are irrelevant in this case and should be

excluded from evidence.  It cannot be established with any reasonable certainty that the prior

sinking of the skiff and the non-replacement of certain electrical parts by Hochstrasser Marina

after that sinking was a cause of the stalling and alleged incident on April 5, 2001.

The plaintiff cannot offer any evidence to support the theory that electrical problems

caused the skiff to stall.  In fact, the plaintiff's own expert was unable to testify at deposition

with reasonable certainty that the skiff stalled due to electrical problems.  Mr. Sargent repeatedly

indicated that he has no idea what happened in this case to cause the skiff to stall, restart and stall

again, or how it would be indicative of an electric problem.

Q[Attorney Murphy]: Now, what evidence, or what support do you have for the
 idea that any of those [electrical] issues caused the vessel to stall, caused the
motor to stall?
A[Mr. Sargent: They're all electrical parts.  The voltage regulator—if the voltage
drops for any reason or other, you don't get the voltage to the sparkplug, and it'll
stall on you.
Q: Do you know whether that happened in this case?
A: I have no idea.
(See Deposition of Sargent, pg. 33, Lines 20-24; pg. 34, Lines 5-7,
attached hereto as Exhibit D).
        *                    *                    *
Q[Attorney Murphy: Does that lead you to believe one way or the other that it's
more likely or less likely that the problem was electrical?

5

A[Mr. Sargent]: I don't know what to make of it, because I don't know what [the plaintiff] did.
Q: Well, if something shorts out, would you be able to start it up again?
A: Jiggle a wire, perhaps.  I don't know what he did….I don't know what the problem is.  I can't answer your question.
(See Deposition of Sargent, pg. 41, Lines 8-22 attached hereto as Exhibit D).
             *              *              *
Q[Attorney Murphy]: So…you don't know one way or the other whether there was an electronic problem that caused the skiff to stall?
A[Mr. Sargent]: Electric or electronic, no.
(See Deposition of Sargent, pg. 46, Lines 10-13, attached hereto as Exhibit D).

Therefore, because there is no significant evidence or testimony which can reasonably establish a connection between the stalling of the skiff on the date of the alleged incident to electric problems from the prior sinking and repairs of the skiff, the Hochstrasser Marina records of March 2001 are irrelevant and should be excluded from evidence.

### III.    Use of March 2001 Hochstrasser Records Is Unfairly Prejudicial

Even if the March 2001 records are deemed relevant, they should still be excluded as the unfair prejudice to the defendant outweighs the probative value of the documents.  Under the Federal Rules of Evidence Rule 403:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The probative value of the records is limited due to the fact that there is no established connection between the March 2001 non-replacement of electrical components in the outboard motor and the stalling of the skiff on April 5, 2001.  Furthermore, the plaintiff cannot lay a foundation to support the theory that any non-replacement of electrical parts caused the alleged stalling in April.  Therefore, to admit the March 2001 Hochstrasser records would be unfairly prejudicial to the defendant and the records should be excluded from trial.

Respectfully submitted,
JAY CASHMAN, INC.,

_____/s/ Robert J. Murphy_____
Robert J. Murphy, BBO# 557659
HOLBROOK & MURPHY
238-240 Lewis Wharf
Boston, MA  02110
617-428-1151
holbrook_murphy@msn.com

Certificate of Service

I hereby certify that on October 12, 2007, I electronically filed the Defendant's Motion In Limine With Incorporated Memorandum Of Law To Exclude The Proposed Exhibit of Hochstrasser's Marina, Inc. Records from March 2001 with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

_____/s/ Robert J. Murphy_____
Robert J. Murphy, BBO# 557659
Holbrook & Murphy
238-240 Lewis Wharf
Boston, MA 02110
(617) 428-1151
holbrook_murphy@msn.com

7