EXHIBIT "E"

**SARGENT & HERKES, INC.**

NAVAL ARCHITECTS AND MARINE ENGINEERS

225 BARONNE STREET • SUITE 1405

NEW ORLEANS, LOUISIANA 70112

TEL 504-524-1612

FAX 504-523-2576

sahinc@bellsouth.net

February 15, 2005

Mr. Randall Zevin
Barish Law Offices, P.C.
Three Parkway, Suite 1320
1601 Cherry Street
Philadelphia, Pennsylvania 19102

Subject:   Steven Ramsey v. Jay Cashman, Inc.
           Date of Accident April 5, 2001
           Our File: 3097

Dear Mr. Zevin:

It is understood that Mr. Steven Ramsey was allegedly injured as he was returning to the dredge *WOOD 1* in a steel skiff. You have asked me to review certain documents connected with this case and provide opinions pertaining to the casualty.

The following documents have been provided for my review:

1. Deposition of Steven R. Ramsey, taken October 20, 2004.

2. Photographs of steel skiff.

3. Statement transcript of Steven Ramsey, taken June 15, 2001.

4. Repair invoices from Hochstrasser's Marina, Inc., Ship Bottom, New Jersey, dated March 7, 2001 and April 6, 2001.

5. U.S. Coast Guard accident investigation file, including USCG Form CG-2692, U.S. Army Corps of Engineers Accident Report, and New Jersey State Police Accident Report.

Mr. Steven Ramsey was employed as a mate/engineer aboard the cutter head dredge *WOOD 1*, which was owned by Sterling Equipment, Inc. of East Boston, Massachusetts and

RECEIVED FEB 2 3 2005

Steven Ramsey v. Jay Cashman, Inc.                                February 15, 2005
Personal injury navigating a steel skiff

Mr. Randall Zevin                                                  Page 2

operated by Jay Cashman, Inc. Reportedly, the *WOOD 1* was engaged in operations to abate coastal erosion at the Barnegat Inlet Light House on the coast of New Jersey. The *WOOD 1* was moored approximately 75-100 feet off the south shore of Barnegat Inlet. Attached to the *WOOD 1* was the deck barge *SEI-11*, which was carrying rock fill for the erosion project. The *SEI-11* was also owned by Sterling Equipment and operated by Jay Cashman. The *WOOD 1* was reportedly moored by two lines forward and two lines aft.

On April 5, 2001, Mr. Ramsey was operating a steel skiff carried by the *WOOD 1* to pick up parts for the cutter head from shore and deliver them to the *WOOD 1*. The skiff was approximately 18 feet long and powered by a single 40-horsepower Mercury outboard motor. The skiff was equipped with a center console located forward in the vessel.

According to his testimony, as Mr. Ramsey maneuvered the skiff around the stern of the *WOOD 1* after retrieving the parts from shore. During the trip back to the dredge, the outboard motor on the skiff kept stalling, and the motor could not be put into reverse. There was reportedly a strong current flowing out of Barnegat Inlet into the Atlantic Ocean at the time Mr. Ramsey was in the skiff. The direction of this current was from the stern of the dredge towards the bow.

When Mr. Ramsey reached the stern of the dredge, the captain requested that the parts be brought to the bow. As Mr. Ramsey was maneuvering away from the stern of the dredge while trying to keep clear of the stern mooring lines, the skiff struck one of the mooring lines, the motor stalled, and the current trapped the skiff against the rake of the material barge, *SEI-11*. Due to the low freeboard of the skiff and the high tidal current, the skiff capsized and began to sink. As Mr. Ramsey was abandoning the skiff and attempting to climb onto the *WOOD 1*, the sinking skiff struck Mr. Ramsey across his back, pinning him to the hull and fenders of the dredge, and pulling him under the surface. With the assistance of other personnel on the *WOOD 1*, Mr. Ramsey was freed and evacuated to Atlantic City for treatment of his injuries.

According to testimony and the repair invoices from Hochstrasser's Marina, Inc., the steel skiff had reportedly sunk previously on or about March 5, 2001. The invoice notes that a 40 h.p. Mercury motor, serial number OG495877, was brought in after sinking in salt water. The invoice notes that the motor was flushed with fresh water, the carburetors were cleaned, the fuel lines cleaned and the lube oil replaced. There is a note which states, "stator, voltage regulator, switch boxes, starter solenoid <u>were not</u> changed. Advise doing so since it sank in salt water." (emphasis in original) A further notation states, "Do not change any electronics, starter, etc." After Mr. Ramsey's accident, a second Hochstrasser invoice shows that the same Mercury motor was placed for repair.

Steven Ramsey v. Jay Cashman, Inc.  
Personal injury navigating a steel skiff

February 15, 2005

Mr. Randall Zevin

Page 3

In my opinion, the electrical system of the skiff should have been completely checked and/or changed out following the sinking in March. Electrical and electronic components can be readily damaged or destroyed by immersion in salt water. Depending upon the type of component and its construction, the damage due to immersion may not become immediately apparent, and problems can occur at a later time due to salt water corrosion.

Reportedly, this same skiff has sunk on other than these two occasions. Mr. Ramsey estimates that the skiff weighs approximately 3000 pounds and he says that the skiff has low freeboard. In my opinion, a 40-h.p. outboard motor is designed to operate with a much lighter vessel, and its performance would only be reduced by the presence of a large tidal current.

In my opinion, the failure of the engine, either caused by the inadequate repair following the previous sinking or the propeller striking a mooring line or other obstacle, was the proximate cause of the casualty. Either insufficient power or engine failure when operating in the swift tidal current contributed to the boat striking the mooring line, after which it capsized and sank.

Further, in my opinion, this underpowered skiff was unsuitable for operating in the swift current at that location.

An inspection of the skiff is pending. In the event that additional information, facts or details are developed, or any additional expert reports are submitted, a supplementary report may be issued.

For your additional guidance, included are a summary of my work experience, educational background, and qualifications, Appendix I; a list of publications authored within the preceding ten years, Appendix II; a schedule of rates showing compensation to be paid for the study and testimony, Appendix III; and a listing of other cases in which I have testified as an expert at trial or by deposition within the preceding four years, Appendix IV. I intend to testify as a naval architect / marine engineer.

Very truly yours,

Arthur C. Sargent

Encl.  
ACS:cd