EXHIBIT "G"

# SARGENT & HERKES, INC.

NAVAL ARCHITECTS AND MARINE ENGINEERS
400 POYDRAS STREET • SUITE 1540
NEW ORLEANS, LOUISIANA 70130
TEL. 504-524-1612
FAX 504-523-2576
sahinc@bellsouth.net

June 27, 2006

Mr. Randall Zevin
Barish Rosenthal
Three Parkway, Suite 1320
1601 Cherry Street
Philadelphia, Pennsylvania  19102

JUN 13 2006

Subject:    Steven Ramsey v. Jay Cashman, Inc.
            Date of Accident April 5, 2001
            Our File:  3097

Dear Mr. Zevin:

You have provided me with the following report and asked me to review and comment on the opinions contained therein:

1.   Report of Marine Safety Consultants, Inc., signed by David C. DuBois, dated May 10, 2006.

On page two of the report, Mr. DuBois states, "In my opinion, the skiff was a reasonable vessel to use at the work site considering all of the circumstances, including the vessel's estimated weight, freeboard and horsepower and in light of the prevailing weather, sea and tide condition."

After reviewing the testimony, in my opinion, the skiff lost power during a time when the tide was flowing out of the Barnegat Inlet, producing tidal currents adjacent to the work vessels. The skiff, which had sunk one month prior to the incident, lost power while Mr. Ramsey was attempting to maneuver it. The question which should be addressed is not whether the skiff was a "reasonable vessel", but was it seaworthy at the time of the incident. The failure of the motor at a time when the vessel could be pinned under the work vessels by the tidal current suggests that the skiff was not seaworthy.

The records of Hochstrasser's Marina, where the skiff was taken the month before the incident, indicate that electrical components on the motor were not replaced as recommended after the skiff was raised. In my opinion, these components were damaged by immersion in salt water,

Steven Ramsey v. Jay Cashman, Inc.                          June 27, 2005
Personal injury navigating a steel skiff

Mr. Randall Zevin                                           Page 2

and when they malfunctioned, the loss of power resulting from the malfunction allowed the skiff
to be caught by the current and caused it to sink.

Further, testimony indicated that the skiff capsized and sank, suggesting that the freeboard
was insufficient to keep water out of the interior of the vessel after it had become pinned by the
current. The testimony also suggests that the skiff did not possess reserve stability sufficient to
keep it afloat should it become swamped.

On page four of his report, Mr. DuBois states, "In my opinion, the condition of the above
electronics, including the stator, voltage regulator, switchboxes and starter solenoid were
unrelated to the skiff stalling on the day in question."

In my opinion, the items named by Mr. DuBois are not frills, but components essential to
start the motor and keep it running. A failure of one or more of these components could have led
not only to the stalling of the motor, but to making it difficult, if not impossible, to restart the
motor after it has stalled. The failure of the electronics need not be permanent, where the item
refuses to function at all, but intermittent failures, in my opinion, could allow the skiff to be
caught by the current, placing the occupants in danger. Irrespective of the cause of the motor
failures, however, it should have been removed from service and repaired.

On page four, Mr. DuBois concludes his report abruptly, "In my opinion, the sole cause
of the vessel stalling immediately prior to Mr. Ramsey's injury, was Mr. Ramsey's negligence
in allowing the outboard motor to strike the mooring line."

Mr. DuBois claims that Mr. Ramsey struck the mooring line while maneuvering the skiff
with the motor running. Mr. DuBois does not explain how the alleged striking of the mooring
line by the motor caused it to stall and fail to restart. In my opinion, a failure of the electronics
on the motor explains why the motor ran intermittently before the incident and why Mr. Ramsey
was unable to start it when attempting to move the skiff to the bow of the dredge.

In the event that additional information, facts or details are developed, or any additional
expert reports are submitted, a supplementary report may be issued.

Very truly yours,

Arthur C. Sargent

ACS:cd